# UNITED COURT STATES DISTRICT
# DISTRICT OF MINNESOTA

Rashad Ramon Ivy, Plaintiff

Case No.: 24-cv-3425 (NEB/DJF)

V.

JURY TRIAL DEMANDED

**William Bolin,** Warden at MCF-Stillwater;
**Margit Heald,** Caseworker;
**Kate Hoffer,** Case Worker;
**Christian Dobratz,** Minnesota Ombudsman for Corrections;
**Dan Moe,** Associate Warden of Operations and Abuse Review Committee;
**Corey Anderson,** Abuse Review Committee;
**Carufel,** Visit Lieutenant and Abused Review Committee;
**Rick Raven,** Visit Lieutenant and Abuse Review Committee;
**Abuse Review Committee,** in their individual and official capacities,

Yes

Defendants

## PLAINTIFF'S COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 &

### I. PREVIOUS LAWSUITS

Plaintiff has not filed any previous lawsuit related to the claims or facts herein

### II. INTRODUCTION

Plaintiff, **Rashad Ramon Ivy,** is currently confined at 970 Pickett Street North (MCF-Stillwater) Bayport, MN 55003. This is a Civil Rights Action filed by Mr. Ivy, a state prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging that defendants and their policy precluded him from contact visits with his minor daughter, and denied him video visits for both his minor and adults children while incarcerated for more than *Eight years,* caused him to be deprived of a substantive-due-process right to

1

Rashad Ivy

parent his minor daughter and to physically see her in violation of 1st, 8th and 14th Amendments.

## III. EXHAUSTION OF ADMINISTRATIVE GRIEVANCES:

Plaintiff has exhausted his administrative remedies with respect to all claims and all defendants. The aforementioned exhausted facility grievances and all information is attached within and accompanied by an AFFIDAVIT.

## IV. PARTIES

1. **Mr. Rashad Ramon Ivy,** listed as Plaintiff herein, is currently a prisoner at the Minnesota Correctional Facility - Stillwater (MCF-Stillwater) located in Washington County, in the State of Minnesota, and has been in the custody of Mr. Paul P. Schnell, Commissioner of Corrections, in the State of Minnesota since May 2016. He has been at MCF-Stillwater, which is and has been under the control and supervision of Defendant **William Bolin,** Warden and a final decision maker on appeals for visiting classification issues, and defendant **Dan Moe, Associate Warden of Operation and member of the Abuse Review Committee,** and are responsible for reviewing all administrative appeals concerning visiting restrictions filed by MCF-Stillwater inmates, at all times relevant to this lawsuit, and were acting under the color of state and federal law and are being sued in their individual and official capacities.

2. **Defendant Margit Heald**, is and was at all times relevant to this lawsuit, Heald was a caseworker assigned to plaintiff at his intake at Minnesota Correctional Facility - Saint Cloud (MCF-SCL) on May 2016. Heald is an agent/employee of the State

of Minnesota Correctional Facility and a liaison between Inmates and other departments, and on information and belief, she is a member of the Abuse Review Committee at MCF-Stillwater, and was acting under the color of state and federal law and is being sued in her individual and official capacities.

 3. **Defendant Kate Hoffer**, is and was at all times relevant to this lawsuit, she is a caseworker assigned to plaintiff upon his arrival at (MCF-Stillwater), on December 22, 2020. Hoffer is an agent/employee of the State of Minnesota Correctional Facility and a liaison between Inmates and other departments, and on information and belief, she is a member of the Abuse Review Committee at MCF-Stillwater, and was acting under the color of state and federal law and is being sued in her individual and official capacities.

 4. **Defendants Abuse Review Committee**, is(are) and was(were) at all times relevant to this lawsuit, the Abuse Review Committee at Minnesota Correctional Facility Saint Cloud (MCF-SCL) and MCF-Stillwater, are an agents/employee of the State of Minnesota Correctional Facility, and were acting under the color of state and federal law and are being sued in their individual and official capacities.

 5. **Defendant Corey Anderson**, is and was at all times relevant to this lawsuit, on information and belief, is a member of the Abuse Review Committee at MCF-Stillwater, and **defendants Rick Raven** and **Carufel** are Lieutenants (Lt.) for the visiting department and members of the Abuse Review Committee and agent/employees of the State of Minnesota Correctional Facility, and were acting under the color of state and federal law and are being sued in their individual and official capacities.

**6. Defendant Christian Dabratz, M.A** is at all times relevant to this lawsuit, Dabratz is an Ombuds Investigation Specialist for the State of Minnesota appointed by the Minnesota Governor as an independent agent to investigate complaints of Inmates and staff arising from the Department of Corrections (DOC), and was acting under the color of state and federal law and is being sued in her individual and official capacities.

## V. JURISDICTION

7. The Court has jurisdiction over plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. § 1331 and 28 U.C.S. §1343. Plaintiff also invokes this Court's jurisdiction seeking declaratory judgment pursuant to 28 U.S.C. § 2201. Jurisdiction of this Court is invoked on supplemental jurisdiction over Plaintiff's State Law Claims pursuant to 28 U.S.C. § 1367.

## VI. FACTUAL ALLEGATIONS

8. Plaintiff Rashad Ramon Ivy was convicted in May 2016 of engages in the sex trafficking of an individual; Solicit/Induce Individual to Practice Prostitution; Criminal Sexual Conduct-3rd Degree-Force or Coercion (Court Case Number: 62-CR-15-4420) and because of the incorrect offense description of count 7 by the Court, instead of using the language in Minn. Stat. § 609.322, subd.1a(4) which punishes sex trafficking of an individual, the Court had incorrectly use the language in Minn. Stat. § 609.322, subd. 1(a)(4), which punishes sex trafficking of an individual under the age of 18. As a result, on May 26, 2016 Defendant Margrit Heald, plaintiff's Case Manager completed an Abuse

Offender Categorizing Form and classified plaintiff to Non-Contact (NC) with minors in his prison Intake and Plaintiff was restricted from all visits with his minor daughter and video visits with anyone, while Plaintiff's projected release date is July 05, 2039.

**9.** This Non-Contact visits extended also to video visit with any minors or adults, no individuals are able to schedule video visit because defendants Heald, Hoffer, Carufel, Raven, Moe, Bolin, Anderson and Abuse Review Committee have blocked this process, and it remains unclear if NC visits also mean video visit because the D.O.C. policy 3020.100 Visiting" defines *video visit* as a pre-scheduled visit using technology that allows a visitor at an offsite location to visit with an incarcerated/resident.

**10.** Despite the incorrect description of count 7, the duty of Defendant Heald requires her to be diligent and discovery such a mistake even without the intervention of the Court's Amended Warrant of Commitment.

**11.** Defendant Heald classified Plaintiff as NC with minors pursuant to section (a) and (b) of the Abused Offender Categorizing Form, but section (a) contains language such as "have conviction for a physical offense involving a non-dependent minor" and section (b) "having a conviction for a sexual offense or one with sexual characteristics involving a nondependent minor, and have not subsequently completed Sex Offender Treatment," while Plaintiff convictions does not involve any minors.

**12.** Plaintiff was unnecessarily placed under yearly review by defendants Heald, Hoffer, Bolin, Moe, Anderson and Abuse Review Committee, with a directive to stay discipline free which is a process required under the Abuse Offender classification for

inmates who carry a charge and conviction of sex trafficking or physical abuse involving a minor.

13. On June 29, 2020 the Minnesota Court of Appeals issued a decision that Plaintiff's warrant of commitment contained error, and this order was forwarded to District Court to correct it, and defendants have demonstrated they've been digging into Plaintiff's Complaint in Court, therefore, there is a possibility they may have seen this decision from the Court, but they continued to place Plaintiff on visiting restriction.

14. On December 22, 2020 Plaintiff was transferred to MCF-Stillwater and his case management file was electronically transmitted to his new case manager defendant Kate Hoffer, who in turn did not restore his visiting rights, instead, she adopted defendant Heald's decision to continue depriving Plaintiff both contact and video visits with his minor daughter, and video visits with his adult children.

15. On July 6, 2021, over a year after the Court of Appeals disposition of the third appeal remanding with instructions to correct/amend. Plaintiff filed with the district court a Motion for Correction of Sentence, pursuant to Minn.R.Crim.P. 27.03, subds. 9 and 10, requesting the court to issue an order or amended warrant of commitment that lists Count 7 as a violation of Minn. Stat. 609.322, 1a (4) and reference sex trafficking of an individual <u>and not</u> sex trafficking of an individual under 18. Judge Bartscher filed an amended warrant of commitment and changed the incorrect language listed for count 7, and on information and belief this amendment was then sent to defendant Paul Schnell commissioner of Corrections to adjust Plaintiff's prison electronic file through COMS

with correct conviction description, but neither Mr. Schnell, nor Ms. Hoffer corrected it or restored Plaintiff's visiting rights with his children.

16. On September 15, and September 22, 2022 Plaintiff requested again that his visiting rights be restored, specifically he asked to know if this restriction is based on the language in count 7 of his conviction, defendants Abuse Review Committee (ARC) responded that they don't know, "*you have a significant amount of convictions. Whatever charge/charges involved a minor. Any convictions involving a minor upon intake results in a visiting restriction.*"

17. On July 2, 2021 the Minnesota Assistant Ramsey County Attorney, Ms. Alexandra Meyer sent a letter to Plaintiff acknowledging the Court of Appeals Opinion dated June 29, 2020 that corrected the warrant of commitment to remove the language of being convicted of any crime involving a minor.

18. On September 22, 2021 Lt. Carufel continued to restrict visit to Plaintiff, she responded to the kite stated that one of Plaintiff's victims was a Minor that is why he has non-contact visits.

19. Contrary to Lt. Carufel, the D.O.C. "Visiting" Policy 302.100 defined "victim" as "the individual or individuals named as a victim in the complaint, in any charging documents (Complaint) that were dropped as part of a plea agreement where the offender/resident was convicted/adjudicated out of the same set of circumstances, as the subject of an active protective order, or as the subject of an active department of Corrections, no contact directive, the victim must be defined in the offender's

active/current offense." To the contrary, no defendants have shown to Plaintiff which charging document or convictions listing victims that was either his daughter or minors.

20. On November 4, 2021 Lt. Carufel responded on behalf of the Abuse Review Committee to Plaintiff's facility Appeal to restore his visiting rights and privileges, she denied his appeal and gave him a directive to continue to remain discipline free and get involve in positive programming at the facility when available and told him to appeal again in one year. This added cruel and unusual punishment was not part of the penalties warranted by the Court.

21. On February 2022, Plaintiff challenged Lt. Carufel's appeal decision and on February 15, 2022 Lt. Rick Raven denied it again and ordered him to appeal again in one year and to remain discipline free, and disregarded the relevant Opinion of the Court of Appeals.

22. On April 18, 2022 Plaintiff sent a kite to Lt. Carufel and asked if his visits restriction with his minor daughter is due to the erroneous description on count 7 of his warrant of commitment. Lt. Carufel responded "Due to your assault of a 3-year-old, you have a 'Non-Contact' with minor's restriction. This makes it so you do not qualify for video visits." Once again Lt. Carufel refused to provide Plaintiff with the correct citation as to where she got the information that Plaintiff assaulted a 3-year-old.

23. On March 6, 2024 Plaintiff contacted the Warden Bolin and provided him all relevant documents and informed him of the June 29, 2020 Opinion of the Court of Appeals and requested that he restore Plaintiff's visiting rights through video visits because his children do not live in the State of Minnesota, he also informed the Warden

8

Rashad Ivy

that he never had a victim that was a minor. The Warden refused to restore Plaintiff's visiting rights and told him that on April 15, 2024 the Abuse Review Committee reviewed this issue and the appeal was denied.

**24.** On March 12, 2024 Plaintiff sent another kite to the Warden Bolin requested that if he is unwilling to help him with this, then he should give him the rationale for the denial of his video visits because he was told he assaulted a 3-year-old and this is not true. The Warden reaffirmed his previous response referring to the Abuse Review Committee and stating "The rationale is that I agree with their decision."

**25.** On March 19, 2024 Plaintiff filed a formal grievance to Warden Bolin regarding his visiting status. The Warden claimed that he received this grievance on March 26, 2024 and denied it and highlighted a requirement which stated "This is not an issue you can grieve. This issue already has an appeal process that you must follow. Decisions from that appeal process are final and cannot be grieved to the warden. Discipline and Treatment are examples of issues that have their own appeal process and cannot be grieved." Then, Mr. Bolin referred Plaintiff to the visiting Policy 302.100.

**26.** On March 31, 2024 Plaintiff appealed Warden Bolin's response for his visit to be restored, to which Warden Bolin again, denied the appeal, and told Plaintiff to perform an investigation that was supposed to be done by the D.O.C and its agent/employees for this matter, he told him to contact Records to see if the D.O.C. has updated information on his corrected/amended sentencing Order. This appeal to D.O.C. Commissioner Schnell was also denied.

9

Rashad Ivy

27. On April 19, 2024 Plaintiff filed a complaint to Minnesota Ombudsman Mr. Dobratz for Corrections, and provided Mr. Dobratz the Plaintiff's original grievances and documents. According to its provision, Mr. Dobratz was to be neutral and impartial, instead, he sided with defendants, and claimed that he reviewed Plaintiff's D.O.C. file and policy 302.100 and that the defendants properly followed the policy and the actions of the D.O.C. were not found to be unreasonable and concluded that Plaintiff's criminal convictions involve the sexual/physical abuse of minors.

28. On May 24, 2024 Plaintiff sent another letter to Mr. Dobratz Ombudsman, he requested his original documents, and attached a copy of an October 26, 2021 Opinion of the Appeals Court corrected warrant of commitment, he told Mr. Dobratz that Mr. Dobratz had misspoken because there has never been an incident of abuse involving any of his daughters. Mr. Dobratz apologized stating that he does understand Plaintiff was never convicted or charged with this crime, but stated "it was disclosed in your criminal complaint, as noted by AWO Moe in his response to your most recent inquiry, that there was an incident of abuse involving your minor daughter that was discuss in detail and that named you as the perpetrator of that crime."

29. Then Mr. Dobratz continued to show bias and being partial and contradicting himself stating that there is no requirement of the D.O.C to show Plaintiff was convicted of such a crime if there is an allegation and a documented history of the abuse with evidence to support the allegation, then said that this case is closed, while refusing to acknowledge plaintiff's allegation to the warden that his minor daughter never lived in Minnesota where he was convicted.

30. Regarding the original documents sent to Mr. Dobratz, Plaintiff received back only copies of these grievances and documents with attached note from Mr. Dobratz falsely claiming that the originals were mailed with his response letter to the complaint, then blamed the D.O.C. for the loss of the originals, but refused to investigate it, instead he suggested that Plaintiff conduct this investigation on his own. Contrary to Mr. Dobratz, plaintiff only received one sheet of paper as a response folded and placed in a small envelope and none of the original documents could have fit in it.

31. On May, 28, 2024 Plaintiff sent to Mr. Moe a copy of discussion from the Court regarding correction of the warrant of commitment and a copy of a letter from the Appellate Public Defender who represented him on his Appeals. Plaintiff requested to restore his visiting right with his minor daughter and showed distress that he had to go through the entire COVID pandemic without seeing his daughters. Defendant Moe responded that he had looked into all of this and the bar will not be lifted.

32. On June 11, 2024 Plaintiff sent another kite to Mr. Moe to inform him once again that he was never charged or convicted of child abuse, kidnapping or anything involving children, and requested to restore his visiting rights with his daughters. Mr. Moe said that their decision is in compliance with D.O.C policy, then attached a Memo falsely stated that one of Plaintiff 's victims was his minor daughter. It still remains unclear where Mr. Moe found this information from.

33. On July 2, 2024 Plaintiff requested from Mr. Moe copies of his charge description, Abuse Offender Characteristics Form, and the policy number for the Abuse Review that was relied upon to implement the visiting restriction. Mr. Moe refuse to

11

provide such information, but directed the Plaintiff to his Case manager and Abuse Review Committee. Mr. Moe claimed he was not a member of any Abuse Review Committee.

34. Plaintiff followed the direction of Mr. Moe, and on July 12, 2024 he sent a kite to the Abuse Review Committee and requested the documents listed in ¶ 33. Instead, he received back the kite with no response but Mr. Corey Anderson added both her name and Mr. Moe's next to the Abuse Review.

## CLAIMS FOR RELIEF

35. The actions of defendants Heald, Hoffer, Carufel, Raven, Moe, Anderson, and the entire Abuse Committee willfully and purposely deprived and interfered with Plaintiff Mr. Ivy's fundamental Right and liberties and interest protected by the Substantive Due Process and freedoms protected by the Bill of Rights, Constitutional Rights, precluded Mr. Ivy from visiting in-person and video with his minor daughter in violation of the Fourteenth Amendment to the United States Constitution.

36. Among the fundamental rights protected by the Due Process Clause is the liberty and interest of parents/ Mr. Ivy in the care, custody, and control of his minor daughter and adult children, and this care, custody, and control of Mr. Ivy's minor daughter was reside first in Mr. Ivy's, capacity as a parent, whose primary function and freedom include preparation for obligations the prison or the state can neither supply nor

hinder, and these parental rights include the right to direct the education and upbringing of one's child, to conceive and raise one's child, uplifting one's child, to direct the religious, observation of physical and mental growth of one's child. All the above are constitutionally protected parental rights encompass the relationship between parent and child.

37. The failure of defendant Bolin to act to restore Mr. Ivy's visiting rights with his children and by upholding the decision to deprive Mr. Ivy of physical and video visits with his minor daughter, denied Mr. Ivy due process of law in violation of the Fourteenth Amendment of the United States Constitution.

38. The action of defendant Dobratz in collusion with the other defendants and refusing to be impartial as a neutral agent appointed by the Governor of Minnesota to investigate allegations amongst staff and inmates, and his action of siding with defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, and the entire Abuse Review Committee in furtherance to deprive Mr. Ivy's visits with his children, then making false misrepresentation of the facts that Mr. Ivy assaulted his minor daughter, and purposely loose Mr. Ivy's Original documents which interfere with his access to the Court, violated Mr. Ivy's First amendment and Fourteenth Amendments of the United States Constitution.

39. The actions of defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Review Committees misuse of the Minnesota Department of Corrections policy 302.100. Along with the misapplication of the Abuse Offender Categorizing precluding Mr. Ivy from visiting with his older children and his

minor daughter through video. Their ill use of the policy and categorization rule contributed to and are in direct violation of Mr. Ivy's substantive Due Process and Eight Amendment right under the United States Constitution.

40. The actions of defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Committees in categorizing Mr. Ivy as being charged and convicted of assault on his own minor daughter to prevent him from visiting his children, were done maliciously and sadistically with deliberate indifference and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

41. Defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Committees purposely and intentionally unnecessarily applied their policy 302.100 to preclude Mr. Ivy for more than Eight Years from visiting with his minor daughter and video visit with both minor and adult children and family members causing irreparable injuries, the time cruelly taken away from Mr. Ivy by these defendants in violation and disregard of his 1st, 8th, and 14th Amendments to the United States Constitution.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff request that the Court grant the following relief:

**A. Issue a declaratory judgment stating that:**
   1. Defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Committees violated Mr. Ivy's Substantive Due Process by precluding him from visiting with his minor daughter in-person or via video and his children that are over 18 via video.

    **2.** The Policy and Abuse Offender Categorizing process of Defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Committee contributed to the violation of Mr. Ivy's First, Eighth, and Fourteenth Amendment right under the United States Constitution and deliberately subjected Mr. Ivy' to unnecessary cruel and unusual punishment.

    **3.** Defendant Dobratz's action in siding with defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, and the Abuse Committees refusal to investigate and be impartial, along with deliberately losing Mr. Ivy's original Grievance and other documents violated Mr. Ivy's First, and Fourteenth Amendment rights and contributed to the violation of Mr. Ivy's Eighth Amendment right to be free from Cruel and Unusual Punishment.

    **4.** Defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, Dobratz, and the entire Abuse Committees unreasonably imposed additional penalties upon Plaintiff Mr. Ivy by their unconstitutional application of their policy 302.100 and restricted visits to his minor and adult' children in violation of his 1st, 8th, and 14th Amendments to the United States constitution

**B. Issue an injunction ordering defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, and the entire Abuse Review Committees, and their agents to:**

    **1.** Immediately restore all Plaintiff /Mr. Ivy's visiting rights with his minor daughter and adult children.

    **2.** Immediately make access to pre-scheduled video visits for Mr. Ivy with all other individuals that are currently blocked.

    **3.** Ordering Defendants Bolin, Heald, Hoffer, Carufel, Raven, Moe, Anderson, and the entire Abuse Committees to immediately cease and desist from applying this policy 302.100 as they did to Mr. Ivy and perhaps with other inmates unconstitutionally.

    **4.** For defendant Bolin to reassign Mr. Ivy a new caseworker given the conduct alleged in this complaint and the filing of this case which creates a conflict of interest.

**D. Award compensatory damages in the following amounts:**

1. $ 1,000,000 jointly and severally against defendants Bolin, Heald, Hoffer, Moe, Raven, Carufel, Dobratz, Corey Anderson, and the entire Abuse Review Committee for unnecessarily subjecting Mr. Ivy to Cruel and Unusual Punishment, by depriving him of visiting with his minor daughter and adult children and rights to parenting. By this demand, Mr. Ivy seeks the above compensatory damages for: (1) Being deprived of in-person and video visiting, so that he can parent and connect emotionally with his minor daughter. (2) For being deprived of video visiting so that he can connect emotionally with his adult children that due not live in the State of Minnesota. (3) For suffering from the disconnection from family and friends. (4) For the additional anguish and distress that Mr. Ivy had to go through throughout majority of the COVID pandemic without seeing any of his kids, family or friends due to all in-person visiting at

the Stillwater facility being suspended, and Mr. Ivy deprivation of all video visits. (5) For contributing not just to Mr. Ivy's mental distress but his minor daughter as well. Mr. Ivy's minor daughter had recently suffered mental distress after informing Mr. Ivy on the facility phone system that she wanted to see him. Due to missing her father she experienced a suicidal episode and went to the hospital. For causing this deprivation of Mr. Ivy's rights and the harsh and uncommon additional punishment of interfering with Mr. Ivy's ability to parent his children in an already rigid condition for about 8 years and continuing to do so Mr. Ivy pursues the above compensatory compensations for all these reasons.

**E. Award punitive damages in the following amount:**

1. $ 1,000,000 jointly and severally against defendants Bolin, Heald, Hoffer, Moe, Raven, Carufel, Dobratz, Corey Anderson, and the entire Abuse Review Committee.

*F.* Plaintiff seeks an ORDER awarding him damages in an amount in excess of $ 75,000.00 against the defendants jointly and severally together with costs, disbursements, attorney fees and other relief the Court finds just and equitable.

Subscribed to before me,

This 22nd DAY OF August, 2024

Signature of Notary Public

MERCEDES L SALAS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2026

Signature of Plaintiff Rashad Ivy

Mailing Address: Rashad Ramon Ivy
O.I.D. # 249990
MCF-Stillwater
970 Pickett Street North
Bayport, MN 55003