UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rashad R. Ivy, | Case No. 24-cv-3425 (LMP/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| William Bolin, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiff Rashad Ramon Ivy's self-styled *Motion to Renew re [48] Motion to Compel Production of Document and Responses to Interrogatories, and Admissions Pursuant Fed R. Civ. P.37* ("Motion") (ECF No. 82). When Mr. Ivy initiated this lawsuit, he was incarcerated at the Minnesota Correctional Facility-Stillwater ("MCF-Stillwater"),[1] and he is suing several Department of Corrections ("DOC") employees in their individual and official capacities under 42 U.S.C. § 1983. (ECF No. 67 at 1-4.) He is currently serving a lengthy term of incarceration arising from his convictions in 2016 on ten counts, including sex trafficking, domestic assault by strangulation, solicitation to practice prostitution, and criminal sexual conduct. *See Minnesota v. Ivy*, 902 N.W.2d 652 (Minn. Ct. App. 2017). Mr. Ivy's claims in this lawsuit arise from the Defendants' alleged involvement in denying him contact and video visits with his children for over eight years during his incarceration. (ECF No. 67 at 1-2.) He is suing many of these individuals because they are or were members of the Abuse Review Committee ("ARC"), which is responsible for determining restrictions on visitation privileges. (*Id.* at 2-4.)

Mr. Ivy served discovery requests on Defendants on or about April 4, 2025, including

---

[1] Mr. Ivy filed a Notice of Change of Address indicating he was transferred and has been in custody at the Minnesota Correctional Facility in Rush City since September 8, 2025. (ECF No.

requests for production, interrogatories, and requests for admission. (ECF No. 102 at 1.) Defendants mailed their responses and objections to Mr. Ivy on May 5, 2025 along with a production of 245 pages of documents. (*Id.*) Over the next several months, defense counsel and Mr. Ivy met and conferred to discuss Mr. Ivy's complaints regarding Defendants' responses to his discovery requests. (*Id.* at 2.) At their last meeting, defense counsel told Mr. Ivy they would confer with the DOC and respond to him in writing. (*Id.* at 2.) Because the August 1, 2025 non-dispositive motion deadline was fast approaching and Mr. Ivy had not yet received defense counsel's promised written response, Mr. Ivy mailed the Motion to the Court on July 30, 2025. (ECF Nos. 82, 82-2, 85.) Mr. Ivy's Motion seeks to compel Defendants to: (1.) produce documents responsive to ten document requests (ECF No. 83 at 6-15); (2.) supplement their responses to eight interrogatories (*id.* at 15-22); and (3.) supplement their responses to three requests for admissions (*id.* at 22-23).[2] The day after Mr. Ivy mailed his Motion to the Court, Defendants sent Mr. Ivy a letter ("July 31 Letter") addressing some of Mr. Ivy's complaints and providing a supplemental production of 94 pages of documents. (ECF No. 102, 102-3.) Upon reviewing the record, the Court grants in part and denies in part Mr. Ivy's Motion for the reasons stated below.

I.  **Mooted Disputes**

Several of Mr. Ivy's complaints appear to be resolved in light of Defendants' July 31 Letter and supplemental document production. Mr. Ivy's Motion challenges Defendants' position that they were authorized to withhold documents based on: (1.) the Minnesota Government Data Practices

---

107.)

[2] In addition to challenging Defendants' responses to specific interrogatories, document requests and requests for admissions, Mr. Ivy states generally, "ALL other requests for Interrogatories and Admissions that are denied as answer should be considered as disputed." (ECF No. 83 at 23.) To the extent Mr. Ivy seeks a compulsion order as to discovery that his motion does not identify with specificity, he has proffered insufficient grounds for relief and any such request is denied.

Act, Minn. Stat. ch. 13; (2.) Minnesota law governing the production of evidence by the Ombudsperson of the DOC, Minn. Stat. § 241.93, subd. 1(3); and (3.) Minnesota law governing the disclosure of confidential sources in presentence investigation reports ("PSI")[3], Minn. Stat. § 609.115, subd. 4. (ECF No. 102-1 at 6, 16-20.) Mr. Ivy argues these statutes are not a valid basis for withholding responsive documents or declining to respond to an interrogatory in federal litigation. (ECF No. 83 at 7-15, citing *Scheffler v. Molin*, No. 11-CV-3279 (JNE/JJK), 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012).)

Defendants' July 31 Letter withdrew their objections on these statutory grounds except as to Mr. Ivy's PSI. (ECF No. 102-3 at 3.) Plaintiff's Motion is therefore moot to that extent. Defendants' supplemental document production also appears to have mooted the parties' discovery disputes as to Requests for Production 2, 5, 8, and 11 and Interrogatories 9 and 10. (ECF No. 98 at 5, 7, 11, 13, 15-16.) The remaining disputes include Plaintiff's demand for production of the PSI and his complaints related to: Requests for Production 1, 6, 7, 9, and 10; Interrogatories 1, 2, 11, 12, 14, and 15; and Requests for Admission 1, 2, and 6.

## II.  Legal Standards

Federal Rule of Civil Procedure 26 governs discovery in federal court, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While Rule 26 contemplates liberal disclosure, discovery is not unlimited. *See, e.g.*, *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) ("Modern civil procedure in the Federal courts contemplates liberal disclosure … Nevertheless, discovery is not unbridled and not unlimited."). "The party seeking discovery must

---

[3] A PSI is typically prepared by a probation officer after a defendant is convicted, but before sentencing, and addresses the defendant's "individual characteristics, circumstances, needs,

satisfy some threshold showing of relevancy before discovery is required." *Great Am. Ins. Co.*, 2024 WL 6475967, at *4 (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "Once that threshold has been met, the resisting party must show specifically how each interrogatory or request for production [or request for admission] is not relevant or how the discovery is overly broad, burdensome, or oppressive." *Id.* (citation modified).

## III. Analysis

### A. PSI

Defendants acknowledge that Mr. Ivy's PSI may be responsive to his discovery requests, but object to producing it pursuant to Minn. Stat. § 609.115, subd. 6, which generally restricts the disclosure of PSIs. (ECF Nos. 98 at 6; 102-3 at 3-4.) To the extent Defendants oppose the production of Mr. Ivy's PSI in any form on that basis, their objection is meritless. First, the statute on which Defendants rely does not support their objection, but instead clearly dictates that a criminal defendant or his counsel shall receive a copy of his PSI.[4] *See* Minn. Stat. § 115, subd. 6 (prohibiting disclosure of PSIs "[e]xcept as provided in subdivisions 4 and 5); Minn. Stat § 609.115, subd. 4(b) (stating that a PSI "shall be provided by the [state] court and the [DOC] commissioner at no cost to the defendant or the defendant's attorney").

---

potentialities, criminal record and social history, the circumstances of the offense and the harm caused by it to others and to the community." Minn. Stat. § 609.115 subd. 1(a).

[4] Insofar as the prosecution may have provided Mr. Ivy's PSI to his criminal defense attorney and not directly to Mr. Ivy, the State has proffered no information to suggest defense counsel failed to disclose it to Mr. Ivy in the ordinary course of representation.

Moreover, this matter is in federal court, where state law regulating the disclosure of non-privileged information has no binding force. *See Scheffler*, 2012 WL 3292894, at *4 ("It is axiomatic that discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure, not by state rules governing access to information."). Under Rule 26(b) of the Federal Rules of Procedure, parties may obtain nonprivileged material that is relevant and proportional to the needs of the case. Defendants concede the PSI may be relevant, and there is no indication that producing it would be burdensome. Under Rule 26(b), this document ought to be produced.

Defendants object to producing Mr. Ivy's PSI based on concerns about the safety and security of victims and codefendants in Mr. Ivy's criminal case. Defendants argue that, if the PSI must be produced, it ought to be redacted because it "includes names, dates of birth, addresses, and phone numbers for victims of [Mr. Ivy's] crimes, describes contacts and attempted contacts that the probation officer had with the victims, and identifies information about [Mr.] Ivy's co-defendants and the statuses of their pleas." (ECF No. 98 at 6.) Defendants state that they are concerned that disclosure of this information could lead to Mr. Ivy or other prisoners misusing it. (*Id.*)

Defendants' concern that other prisoners might access and misuse Mr. Ivy's PSI is reasonable. The Minnesota statute on which Defendants rely generally supports their concern that confidential sources of information should be protected. *See* Minn. Stat. § 609.115, subd. 4 (providing that a written PSI "shall not disclose confidential sources of information unless the court otherwise directs"). Moreover, Rule 26 empowers courts to protect parties and nonparties from the risks of oppression and harassment that may arise from the disclosure of information in discovery. *See* Fed. R. Civ. P. 26(c)(1). Additionally, "[c]ourts have broad discretion to decide discovery motions." *Great Am. Ins. Co. v. Twin Cities Dance & Ent., LLC*, No. 23-CV-767 (NEB/LIB), 2024

WL 6475967, at *7 (D. Minn. Mar. 6, 2024). The Court agrees that the disclosure of Mr. Ivy's PSI should be limited to minimize the risk of such harassment.

Mr. Ivy's PSI is relevant to these proceedings insofar as it portrays Mr. Ivy's conduct in the underlying criminal case, on which Defendants relied in establishing the visiting restrictions at issue (*see* ECF No. 106 at 5, stating, "Defendant Heald assigned Plaintiff non-contact visiting status with minors based on her review of records from Plaintiff's criminal conviction"). But that information is largely distinct from the information Defendants seek to redact. Given Defendants' reasonable concerns and the minimal relevance of the information, the Court will permit Defendants to redact the names, specific dates of birth, addresses, and phone numbers of any crime victims identified in the report, as well as information identifying any of Mr. Ivy's codefendants and the statuses of their pleas. However, because the ages of any victims identified in the PSI are plainly relevant to the claims asserted in this lawsuit (*see, e.g.,* ECF No. 102-2 at 153), Defendants must replace the victims' names with unique identifiers and leave their birth years unredacted.

**B.      Request for Production 1**

Request for Production 1 seeks "[l]egible copies of all statements which concern the facts and circumstances of the incident giving rise to this litigation or damages claimed as a result thereof." (ECF No. 102-1 at 15.) Defendants responded to this request with a boilerplate objection "*to the extent* [the request] seeks attorney work product or documents protected by attorney-client privilege, and is vague and ambiguous, and overbroad and unduly burdensome as it is not limited in time and scope." (*Id.*, emphasis added.) Defendants then produced documents subject to that objection.

Mr. Ivy argues Defendants' response is insufficient on the ground that Defendants failed to explain their basis for claiming privilege. (ECF No. 83 at 6.) There is no evidence in the record that

Defendants actually withheld any responsive document on the basis of privilege or work product protection, and it appears they raised the objection solely to preserve it. (*See* ECF No. 98 at 4, stating they raised the objection "out of an abundance of caution" because it was not clear whether Mr. Ivy defined the term "statements" to include privileged materials.)

Mr. Ivy's complaint is well-founded, however. To the extent that Defendants withheld any responsive document on grounds of privilege or work product protection, they were required to "describe the nature of the documents … in a manner that, without revealing information itself privileged or protected" would allow Mr. Ivy to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). The Court accordingly directs Defendants to prepare a privilege log identifying with specificity any document responsive to this request that they have withheld on grounds of privilege or work product protection. For clarity, and to minimize unnecessary burden, the Court excludes communications between Defendants and their litigation counsel from the definition of "statements", and such documents need not be logged. If Defendants did not withhold any responsive documents, then they must provide confirmation to Mr. Ivy that no such documents have been withheld.

### C. Requests for Production 6, 9 and 10

Requestions for Production 6, 9 and 10 seek documents concerning other DOC inmates who were treated the same or differently than Mr. Ivy based on evidence of crimes involving minors. (ECF No. 102-1 at 17-19.) Defendants asserted multiple objections to these requests, including that the requests seek irrelevant information and are disproportional to the needs of this case. (*Id.*) The Court agrees with Defendants. Mr. Ivy's lawsuit asserts that the DOC violated his First Amendment, Eighth Amendment and substantive due process rights to have visits with his daughter. (ECF No. 67 at 1-2, 13-15.) The Amended Complaint does not assert a claim of unequal treatment. (*See id*.) Whether the DOC treated him similarly to other incarcerated individuals is thus irrelevant, and Mr.

Ivy fails to assert any argument to the contrary. Moreover, by requesting documents concerning other inmates, Mr. Ivy seeks to invade their privacy interests and disproportionately expand the scope of this litigation. Because the imposition of these burdens is unwarranted and Mr. Ivy has failed to make a threshold showing of relevance, the Court will not compel Defendants to produce documents in response to these requests.

### D. Request for Production 7

Request for Production 7 requests "*all copies of plaintiff's Criminal Complaint*, this includes any Amended Criminal Complaint in the case No. 62-CR-15-4420 in which Defendants claimed it showed that plaintiff was charged and convicted of any crime involving a minor." (ECF No. 102-1 at 18, emphasis added.) Defendants produced documents in response to this request. (*Id.*; *see also* ECF No. 83 at 11-12.) Mr. Ivy objects to Defendants' response on the ground that they produced documents alleging his participation in crimes involving a minor, even though other documents show that these documents were erroneous and subsequently amended. (ECF No. 83 at 11-12.) Mr. Ivy's objection is nonsensical. Mr. Ivy requested all copies of his criminal complaint, and Defendants provided them. Whether any of them contains erroneous information is a separate matter from whether Defendants appropriately responded to Mr. Ivy's discovery request. Mr. Ivy acknowledges that Defendants produced multiple versions of his criminal complaint and fails to identify anything improperly withheld. The Court will not compel Defendants to produce documents they have already produced.

### E. Interrogatory 1

Interrogatory 1 asks for the names, "marital status, home address, business address, education, occupation and date of birth" of Defendants and any other individual who was a member of the ARC when the ARC discussed matters concerning Mr. Ivy. (ECF No. 102-1 at 6.) This

interrogatory also asks Defendants to identify whether any of these individuals are in "any relationship with each other" and if so, to state "the status of that relationship, family members or longtime best friends." (*Id.*) Defendants provided "the names, titles, and business addresses of Defendants and, to the extent known, the members of the Abuse Review Committees from 2020, 2021, and 2024, which were the years that the Committees reviewed [Mr.] Ivy's visiting restrictions." (ECF No. 98 at 14.) Defendants refused to provide additional personal information, however, on the ground that disclosing it "would present a safety and security risk and would potentially be disruptive to prison operations." (*Id.*) Defendants state that withholding this information is consistent with existing DOC policy, which prohibits such disclosures to prisoners because it can lead to intimidation, threats, and harassment of prison staff, and cause staff transfers that disrupt prison operations. (*Id.* at 14-15.)

Mr. Ivy contests Defendants' response on several grounds. First, Mr. Ivy states that Defendants improperly omitted Defendant Kate Rudesill (formerly Kate Hoffer) from their response. (ECF No. 83 at 15.) Defendants made no reply to this contention and proffered no reason for any such omission. The Court thus directs Defendants to supplement their response with Defendant Rudesill's full name, title, and a business address, if they have not already produced that information.

Mr. Ivy further contends the relationship and marital status information he requested is relevant to his claims because it might reveal conflicts of interest between DOC officials who ruled on restricting his visitation privileges. (ECF No. 83 at 15-16.) The Court agrees with Defendants. At most, Defendants' relationship and marital status information is only marginally relevant to this matter since Mr. Ivy is challenging whether his visitation restrictions unduly infringe on a constitutional right to visitation privileges with his children; not whether DOC staff-imposed

restrictions were based on an improper motive. Additionally, the risk that prisoners would gain access to the information and misuse it to threaten staff and disrupt prison operations is significant. Considering the marginal relevance of the information Mr. Ivy seeks and the attendant risks of disclosure, the Court will not compel disclosure. *See Thomas v. Heberling*, No. 1:12-cv-1248 (AWI/SAB), 2015 WL 2358891, at *1 (E.D. Cal. May 15, 2015) ("[W]here otherwise discoverable information would pose a threat to the safety and security of the prison … a need may arise for the Court to balance interests in determining whether disclosure should occur.").

Finally, Mr. Ivy seeks the identities of all Abuse Review Committee members from 2016 – 2024 and complains that Defendants improperly limited their answer to members in 2020, 2021 and 2024. But Mr. Ivy has not articulated a clear reason why he needs information about committee members in the remaining years (2016-2019 and 2022-2023). (*See* ECF No. 83 at 15-16.) Defendants state that Mr. Ivy only appealed the visitation restrictions at issue in this case in 2020, 2021, and 2024, and the record is devoid of any information to the contrary. In the absence of any showing that information about Abuse Committee Members during the contested time periods is relevant, the Court will not compel Defendants to produce additional information in response to Interrogatory 1.

### F. Interrogatories 2 and 15

Defendants objected to Interrogatories 2 and 15 on grounds of vagueness. Interrogatory 2 requests the "names, titles and duties of defendants A, B, and C, insofar as they pertain to sitting Abuse Review Committees and in charge of responding to inmates' grievance appeal related to visiting restrictions." (ECF No. 102-2 at 8-9.) Defendants objected to this request as vague and ambiguous as to the meaning of "defendants A, B, and C" and as to the meaning of "in charge of." (*Id.* at 8.) The memorandum in support of Mr. Ivy's Motion suggests that he intended to request the

identities of individuals, other than Warden Bolin, who decide visitation restriction appeals. (ECF No. 83 at 17-18.)  But Mr. Ivy's intent is unclear, even reading Interrogatory 2 together with his memorandum.[5]  The Court agrees that Interrogatory 2 is too vague and ambiguous "to properly apprise the defendants of the information sought." *Stanzler v. Loew's Theatre & Realty Corp.*, 19 F.R.D. 268, 289 (D.R.I. May 17, 1955).  The Court will not compel Defendants to respond for that reason.

Interrogatory 15 asks Defendants to examine several documents and to explain which documents would "have the changes [to his sentence] after the DOC received a copy of the Amended Warrant of Commitment." (ECF No. 102-1 at 14.)  Defendants raised several objections to this Interrogatory, including vagueness.  Mr. Ivy's supporting memorandum clarifies that he wants Defendants to admit that Defendant Margit Heald failed to correct erroneous information about some of his convictions.  (ECF No. 83 at 21-22.)  But the meaning of Interrogatory 15 is impossible to decipher from the text alone, and to the extent Mr. Ivy seeks an admission, he should have provided a request for admission and not an interrogatory.  The Court will not compel Defendants to respond to Interrogatory 15 for these reasons.

### G. Interrogatory 11

Interrogatory 11 asks Defendants to state whether Mr. Ivy has previously been convicted of any crime involving a minor within the last ten years, and if so, to describe the crime and the related legal proceedings.  (ECF No. 102-1 at 12.)  Defendants objected to this interrogatory as vague but nevertheless answered by directing Mr. Ivy to their response to Interrogatory 4 and the documents they produced.  (*Id.*)  These documents refer to the crimes for which Mr. Ivy was incarcerated.  (*See* ECF No. 102-1 at 9-10, 37.)  Mr. Ivy contends Defendants' response does not fully answer the

---

[5] For example, the Court cannot discern whether Interrogatory 2 is focused solely on sitting

interrogatory because it fails to state directly whether any of Mr. Ivy's crimes of conviction involved a minor. (ECF No. 83 at 19-20.)

The Court finds Mr. Ivy's request is not so vague that it fails to apprise Defendants of what is requested. The Court further finds the information he seeks is relevant to these proceedings because he alleges Defendants restricted his visitation rights on grounds of past criminal conduct involving a minor. (ECF No. 102-1 at 35, 37, 94-95; 104.) Moreover, Defendants' response does not fully answer Mr. Ivy's question. Based on the evidence in the record, the Court is unable to determine whether Mr. Ivy's visitation privileges were restricted because he was convicted of a crime that directly harmed a minor, or if his privileges were restricted because of other alleged conduct that harmed a minor. A clear and complete answer to this interrogatory would help resolve that issue. Defendants' responses, though they may list all Mr. Ivy's crimes of conviction, do not clarify whether any of those offenses involved a minor. To the extent that Defendants are concerned about correctly interpreting the phrase "involving a minor," they should apply the broadest reasonable interpretation and then qualify their answer with an explanation.

Defendants argue that Mr. Ivy can get this information for himself. (ECF No. 98 at 17.) But "[g]enerally an interrogatory is proper although the information sought is equally available to both parties." *United States v. 58.16 Acres of Land, more or less in Clinton Cnty, State of Ill.*, 66 F.R.D. 570, 573 (E.D. Ill. Apr. 17, 1975); *see also Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987) ("[A]n interrogatory calling for research is not objectionable, if the interrogated party would gather the information in the preparation of its own case."). Because Interrogatory 11 is relevant and proper, and Defendants did not fully respond to it, the Court directs Defendants to supplement their response to identify which of Mr. Ivy's criminal convictions, if any,

---

members of the Abuse Review Committee or is meant to include other staff.

involved harm to a minor.

**H.      Interrogatory 12 and Request for Admission 6**

Interrogatory 12 seeks the identity of DOC staff with authority to review grievances of visiting restrictions imposed by the Abuse Review Committee. Request for Admission 6 asks Defendants to admit that Mr. Ivy had no criminal charges or convictions involving a minor "at intake" that would support visiting restrictions. (ECF No. 102-1 at 13, 23.) Defendants objected to both requests as vague but proffered substantive responses. (*Id.*)

Mr. Ivy argues Defendants' responses to these requests must be supplemented because he believes they are false. (ECF No. 83 at 20, 23.) But Mr. Ivy has not shown that Defendants failed to provide *complete* responses. Whether Defendants responded *truthfully* is a question of fact to be resolved at trial, and Mr. Ivy's challenge to the veracity of Defendants' responses is not grounds for a compulsion order. The Court thus denies Mr. Ivy's Motion with respect to these requests.

**I.      Interrogatory 14**

Interrogatory 14 asks whether Mr. Ivy's "expiration date for his sentence changed based upon receipt of Amended Warrant of Commitment?" (ECF No. 102-1 at 13-14.) Defendants responded: "Plaintiff's expiration date changed but that change was not related to Plaintiff's visiting restrictions." (*Id.* at 14.) Interrogatory 14 additionally requests that, "*if [Defendants'] answer to Interrogatory 13 is yes*", they provide the date when the DOC received a copy of Mr. Ivy's Amended Warrant of Commitment and the name of the person who discussed that document with his public defender. (*Id.*, emphasis added.) Defendants did not provide the date when the DOC received a copy of Mr. Ivy's Amended Warrant of Commitment or the name of the person who discussed it with his public defender. Mr. Ivy seeks an order directing Defendants to provide the additional information requested. (ECF No. 83 at 21.)

Whether Interrogatory 14 in fact requested the additional information Mr. Ivy seeks depends on Defendants' answer to Interrogatory 13. Defendants did not provide a "yes" or "no" answer to Interrogatory 13 but instead objected to it on the ground that it seeks information regarding the calculation of his sentence, which has no relevance to the claims asserted in this case. (*Id*. at 13.) Because Defendants did not affirmatively respond to Interrogatory 13, it is unsurprising that they did not provide the additional information.

The Court agrees with Defendants that the calculation of Mr. Ivy's sentence has little, if any relevance to the visitation restriction challenge asserted in this lawsuit. Moreover, putting aside the questionable relevance of the additional information Mr. Ivy seeks, Defendants fully complied with Interrogatory 14 since the condition for providing that information—a "yes" response to Interrogatory 13—was not satisfied. Mr. Ivy's request for an order directing Defendants to supplement their response to Interrogatory 14 is denied accordingly.

### J. Request for Admission 1

Request for Admission 1 asks Defendants to admit to the authenticity of several documents. Defendants objected to this request as vague and ambiguous and stated they lacked "sufficient information to admit the genuineness of these documents" and that "the documents speak for themselves." (ECF No. 102-1 at 21.) Mr. Ivy argues Defendants should be compelled to answer because the documents "are similar to documents defendants produced, and other verifiable written communication between plaintiff and defendants." (ECF No. 83 at 22.) Defendants contend their responses were proper because: (1.) "[i]t was not clear to Defendants where [Mr.] Ivy obtained the documents attached or whether he altered them from their original form"; (2.) "[s]ome of the documents were written by [Mr.] Ivy himself"; and (3.) "[s]ome of the documents are not from the DOC." (ECF No. 98 at 20.)

Defendants are not under any obligation to admit to the authenticity of any document they did not create, send, or receive. But to the extent that is not the case, Defendants must make a good faith effort to review the document and assess whether it is in fact an authentic copy of the document they created, sent or received. *See Lemond Cycling, Inc. v. Trek Bicycle Corp.*, No. 08-cv-1010 (RHK/JSM), 2009 WL 10678176, at *4 (D. Minn. Nov. 30, 2009) ("[T]he responding party cannot refuse to admit or deny a request on the basis that it lacks the knowledge to do so, unless and until it has made reasonable inquiry and was unable to obtain the information that would enable it to admit or deny."). Defendants cannot simply refuse to admit to the authenticity of a document because it *may* have been altered. The Court therefore orders Defendants to re-review the documents listed in Request for Admission 1 and conduct a thorough inquiry into whether they can admit to their authenticity.

### K.     Request for Admission 2

Request for Admission 2 asks Defendants to admit to Mr. Ivy's interpretation of an Offender Kite Form containing his written request for information and a response from Defendant Kate Rudesill. (ECF Nos. 102-1 at 21; 50-1 at 134.) Defendants objected based on vagueness and a lack of sufficient information to admit or deny the request, and further stated the document speaks for itself. (ECF No. 102-1 at 21.) Mr. Ivy states, "Defendants could have simply answered that the document speaks for itself, but to answer that they lack sufficient information to admit to this document, it's unresponsive tactic" and therefore, the Court should compel Defendants to answer. (ECF No. 83 at 22.)

The Court agrees that Request for Admission 2 is overly vague and further finds Defendants' answer that the document speaks for itself adequately responds to Mr. Ivy's request. That Defendants proffered an additional objection is not grounds for an order requiring them to

supplement their answer.

# ORDER

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS HEREBY ORDERED** that Plaintiff Rashad Ramon Ivy's *Motion to Renew re [48] Motion to Compel Production of Document and Responses to Interrogatories, and Admissions Pursuant Fed R. Civ. P.37* (ECF No. 82) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants shall produce a copy of Mr. Ivy's PSI with redactions as follows: (1.) Defendants may redact the names, specific dates of birth, addresses, and phone numbers of any crime victims, but must leave their years of birth unredacted and replace their names with unique identifiers; (2.) Defendants may redact information identifying any of Mr. Ivy's codefendants and the statuses of their pleas.

2. Defendants must produce a privilege log identifying with specificity any document responsive to Request for Production 1, as defined above, that they have withheld on grounds of any privilege or work product protection. If Defendants did not withhold any responsive documents, they must provide confirmation to Mr. Ivy that no such documents have been withheld.

2. Defendants must supplement their response to Interrogatory 1 with Defendant Rudesill's full name, title, and a business address.

3. Defendants must supplement their response to Interrogatory 11 by identifying any of Mr. Ivy's criminal convictions that involved harm to a minor.

4. Defendants must carefully review the documents listed in Request for Admission 1 and admit to the authenticity of any documents they created, sent or received.

5. All other requests in Mr. Ivy's Motion are **DENIED**.

Dated:  September 30, 2025                    *s/ Dulce J. Foster*
                                              Dulce J. Foster
                                              United States Magistrate Judge