**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RASHAD RAMON IVY,

Plaintiff,

v.

WILLIAM BOLIN; MARGIT HEALD; CHRISTIAN DOBRATZ; RICK RAVEN; DANIEL MOE; COREY ANDERSON-MOE; JENNY CARUFEL; JEFF WHITE; BRONSON AUSTRENG; ERIC NELSON; KELLY McELROY; DANIELLE REED; AMANDA HOFER; CHAD OYE; and KATE RUDESILL,

Defendants.

Case No. 24-cv-3425 (LMP/DJF)

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION**

---

Rashad Ramon Ivy, pro se Plaintiff.

Bradley Simon and Linnea Constance VanPilsum-Bloom, **Minnesota Attorney General's Office, St. Paul, MN**, for Defendants.

Plaintiff Rashad Ramon Ivy, an inmate at Minnesota Correctional Facility—Rush City ("MCF-Rush City"), alleges that by denying him contact visits and video calls with his minor daughter, Defendants, who are a variety of prison officials, violated his constitutional rights. *See* ECF No. 67. Defendants moved for summary judgment, seeking dismissal of all of Ivy's claims. ECF No. 109. Ivy, in turn, moved for partial summary judgment, seeking adjudication of Defendants' liability, but not damages. ECF No. 118. In a Report and Recommendation ("R&R") issued on June 26, 2026, U.S. Magistrate Judge Dulce J. Foster recommended dismissal of all of Ivy's claims except one trial-worthy claim.

ECF No. 143. Both Ivy and Defendants have filed objections to the R&R. ECF Nos. 146, 150.[1] Accordingly, this Court reviews the conclusions in the R&R that the parties challenge de novo. Fed. R. Civ. P. 72(b)(3). However, portions of the R&R to which the parties do not object are reviewed only for clear error. *Braun v. Minnesota*, No. 22-cv-710 (JRT/JFD), 2022 WL 17038976, at *3 (D. Minn. Nov. 17, 2022) (citing Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment). Having conducted that review, and, given changed circumstances since the R&R issued, the Court overrules Ivy's objections and sustains in part Defendants' objections. The R&R is therefore adopted in part, and this case is dismissed.

## BACKGROUND[2]

***Policies for Inmate Visitation***

The Minnesota Department of Corrections ("DOC") has established a framework of policies related to inmates' visitation and contact privileges.[3] ECF No. 143 at 2–5. Inmates may visit with family and friends through supervised in-person meetings, video calls, phone calls, emails, and letters. *Id.* at 2. Relevant here, however, an inmate's in-person visitation privileges may be restricted if he has a documented "abuse history involving

---

[1] Ivy filed two sets of objections. *See* ECF No. 149, 150. But he later contacted the Clerk's Office and informed them that the objections at ECF No. 149 were filed in error. Per Ivy's request, the Court only considers the objections at ECF No. 150.

[2] No party objects to the R&R's recitation of the factual background of this case, so the Court adopts and cites the R&R's factual background here.

[3] The DOC recently amended its policies related to inmates' visitation and contact privileges; those new policies became effective on March 30, 2026. ECF No. 147 ¶¶ 4–8. The policies in effect during the relevant events in this lawsuit are described in this section.

minors." *Id.* The DOC justifies that restriction based on the need to ensure that minors are not subjected to physical and sexual abuse during in-person visits. *Id.* at 2–3.

Whether an inmate has a documented "abuse history involving minors" is determined by the caseworker completing the inmate's initial intake. *Id.* at 3. The caseworker makes that determination after considering the inmate's convictions and the "characteristics" of his offenses, as well as information from a wide range of other sources, including "[presentence investigation reports], statewide supervisions system (S3), court web, revocation reports, investigation reports, and the victims unit." *Id.* After reviewing these records, the caseworker assigns the inmate an "abuse code." *Id.* There are three abuse codes: (1) Close Supervision, which means the inmate can meet with minors in person, but only under close supervision by DOC staff; (2) Non-Contact Visiting with minors ("NC Status"), which means the inmate only can have in-person visits with minors in a non-contact visiting area; and (3) No Visiting with minors, which means the inmate is not permitted any in-person visits with minors. *Id.*

The inmate's abuse code is documented on an "Abuse Offender Categorizing Form," which explains the inmate's assigned abuse code, the applicable visiting restrictions, and the reasons for the assigned abuse code. *Id.* at 3. An inmate may appeal their abuse code designation to an Abuse Review Committee ("ARC"), and if unsuccessful with the ARC, may appeal the designation to the prison's warden. *Id.* at 4. If those appeals are unsuccessful, an inmate may ask the ARC to reconsider his abuse code on an annual basis. *Id.*

An inmate may not make video calls if he is designated NC Status. *Id.* at 5. The DOC maintains this restriction because, unlike in-person visitation, video calls are not closely monitored by DOC staff in real time. *Id.* Instead, they are recorded and stored for staff to review at a later time. *Id.* Accordingly, DOC staff are unable to intervene to stop abusive behavior when it occurs or when unauthorized minors join the call. *Id.* Without these restrictions, says the DOC, minors may "be exposed to inappropriate visual physical behaviors or harmful verbal content." *Id.*

***Ivy Is Assigned NC Status***

In 2016, Ivy was convicted of sex trafficking, domestic assault by strangulation, solicitation to practice prostitution, and criminal sexual conduct. *See State v. Ivy*, 902 N.W.2d 652, 655–56, 658 (Minn. Ct. App. 2017). He was remanded to the custody of the DOC and arrived at the Minnesota Correctional Facility in St. Cloud ("MCF-St. Cloud") for intake with caseworker Margit Heald. ECF No. 143 at 5–6. As part of the intake, Heald evaluated whether any visitation restrictions were needed and reviewed the amended criminal complaint in Ivy's case, which stated:

> In addition to assaulting K.A.B. [DOB: 4/16/94], on April 26, 2015, IVY physically assaulted both of K.A.B.'s young daughters, K.M. (DOB 04/27/12) and K.B. (DOB 9/7/13), 2015. He whipped K.M. with a leather belt repeately [sic], leaving K.M.'s body badly bruised from head to toe, and then forced her to sit in a tub of ice cold water.

*Id.* at 6. Heald assigned Ivy NC Status because of these allegations. *Id.*; *see* ECF No. 114 ¶¶ 13–14. Heald recognized that Ivy was not convicted of any crime involving physical abuse of a minor but explained that the allegations contained in Ivy's criminal complaint were "clear and unambiguous" and warranted an abuse code. ECF No. 114 ¶ 14; *see* ECF

No. 112-3 (Heald's case notes, indicating that she assigned NC Status because "[o]ne of Mr. Ivy's victim's [sic] was a minor who was whipped with a belt"). Given his NC Status, Ivy could not have in-person contact or video calls with minors, but he could make phone calls, send emails, and write letters to minors. ECF No. 112 ¶ 15.

Ivy did not immediately appeal Heald's NC Status designation. ECF No. 143 at 6. Instead, he first appealed his NC Status in 2020, when he was incarcerated at the Minnesota Correctional Facility in Oak Park Heights ("MCF-OPH"). *Id.* at 7. The members of the ARC at MCF-OPH at that time were Defendants Jeff White, Chad Oye, Bronson Austreng, Eric Nelson, and Kelly McElroy. *Id.* The ARC at MCF-OPH denied Ivy's appeal on December 15, 2020, and Ivy did not further appeal this decision to MCF-OPH's warden. *Id.*

***Ivy's Warrant of Commitment Is Corrected, and Ivy Challenges His NC Status***

Meanwhile, Ivy continued to challenge his convictions and sentence in Minnesota state court. *Id.* In June 2020, the Minnesota Court of Appeals concluded that Ivy's warrant of commitment incorrectly stated that he was convicted of "sex trafficking of an individual under the age of 18"; instead, the warrant of commitment should have read "sex trafficking of an individual." *State v. Ivy*, No. A19-1980, 2020 WL 3494345, at *4 (Minn. Ct. App. June 29, 2020). The state district court corrected Ivy's warrant of commitment in October 2021. ECF No. 143 at 7.

Ivy then began to suspect that his NC Status was the result of the erroneous statement in his warrant of commitment that he had been convicted of sex trafficking of a minor. In September 2021, he appealed his NC Status to the ARC at the Minnesota

Correctional Facility in Stillwater ("MCF-Stillwater"), where he was then incarcerated. *Id.* at 8. Before the ARC decided Ivy's appeal, Ivy sent a "kite"—a written request used to communicate inmate concerns to prison staff— to his caseworker, stating:

> Is the reason I can't have video visits the count 7 conspiracy to sex traffick [sic] someone under 18? I was told that I have a non-contact with minors and the only count that I have that has anything to do with a minor is the conspiracy to sex traffick [sic] someone under 18 so is this why I can not [sic] have video visits?

*Id.* at 8. Defendant Corey Anderson-Moe, a caseworker, responded, "If you have any restrictions, you can't have video visits. . . . You have a significant amount of convictions. Whether charge/charges involved a minor. Any convictions involving a minor upon intake results in a visiting restriction." *Id.* Ivy then sent another kite to Defendant Jenny Carufel, a member of the ARC at MCF-Stillwater, asking whether the erroneous statement in his warrant of commitment resulted in his NC Status. *Id.* Carufel responded, "One of your victims was a minor that is why you have non contact visits." *Id.* The ARC at MCF-Stillwater then denied Ivy's appeal in November 2021 but did not explain its rationale. *Id.* Although Ivy did not appeal the ARC's decision to the warden of MCF-Stillwater, he sent several kites seeking clarification for the basis for the ARC's decision. *Id.* at 9. A correctional officer responded: "Due to your assault of a 3 year old, You have a "Non-Contact" with minors restriction. This makes it so you do not qualify for video visits." *Id.* (emphasis in original).

Ivy next appealed his NC Status in 2024, asserting that he had been erroneously designated as NC Status due to the incorrect belief that he had been charged with assaulting a minor and convicted of sex trafficking a minor. *Id.* In preparation for the ARC's

consideration of Ivy's appeal, Anderson-Moe reviewed Ivy's records and noted the language in his criminal complaint supporting his initial NC Status designation. *Id.* She also noted that Ivy had been subject to disciplinary action since his last ARC appeal in 2021. *Id.* at 10. That disciplinary action took place in September 2023, when the DOC disciplined Ivy for participating in a prisoner protest at MCF-Stillwater in response to substandard living conditions at the prison. *Id.* In February 2024, the ARC at MCF-Stillwater denied Ivy's appeal without providing a rationale, stating simply that Ivy should remain "discipline free" and get "involved in positive programming at the facility."[4] *Id.* Ivy appealed the ARC's decision to the warden of MCF-Stillwater, Defendant William Bolin, arguing that his NC Status stemmed from the incorrect description of his conviction in his warrant of commitment. *Id.* In affirming the ARC's decision, Bolin wrote, "The rationale is that I agree with their decision." *Id.*

Over the next several months, Ivy sent several kites to Defendant Dan Moe, Associate Warden of MCF-Stillwater, reiterating his confusion as to the basis for his NC Status given the absence of any conviction arising from abuse of a minor. *Id.* at 10–11. Moe responded that he had "looked into all of this[;] the bar will not be lifted" and expressed regret that Ivy "d[id] not agree w/ this" but assured Ivy that the decision was "all in compliance of policy." *Id.* at 11.

---

4 In a declaration, Anderson-Moe states that Ivy's 2024 ARC appeal was denied largely because of his 2023 disciplinary violation. ECF No. 111 ¶ 27.

***Ivy Seeks Review from the State Ombuds***

After his complaints to MCF-Stillwater personnel bore no fruit, on April 19, 2024, Ivy filed a complaint with the Minnesota Office of the Ombuds for Corrections, a state agency that independently investigates inmate complaints and evaluates whether DOC has complied with relevant policies and procedures. *Id.* Defendant Christian Dobratz was the investigator assigned to review Ivy's complaint. *Id.* In doing so, Dobratz reviewed Ivy's criminal complaint containing the allegation of child abuse, as well as the relevant visitation policies. *Id.* Dobratz also spoke with Anderson-Moe, who explained that Ivy's visitation restrictions were upheld largely because of his 2023 disciplinary violation. *Id.*

Dobratz concluded that Ivy's visitation restrictions were consistent with DOC policies. *Id.* Dobratz responded to Ivy in a letter, explaining that Ivy's "criminal convictions involve the sexual-physical abuse of minors" and that he had not remained discipline-free. *Id.* at 11–12. Ivy responded to Dobratz in writing, clarifying that he had *not* been convicted of any offenses involving the "sexual-physical abuse of minors" and asserting that he had been discipline-free for two years. *Id.* at 12. Ivy reiterated that his warrant of commitment erroneously stated that he had been convicted of sex trafficking a minor. *Id.* Dobratz wrote back to Ivy and acknowledged that he was mistaken when he wrote that Ivy had been "convicted of a crime of abuse against a minor." *Id.* Dobratz stated that a conviction is not required to impose visitation restrictions, however, and that Ivy's restrictions arose from the allegation in the criminal complaint that he repeatedly whipped K.M., a three-year-old child, with a belt. *Id.*

In a declaration, Dobratz admits that he was mistaken when he stated in his first letter to Ivy that Ivy was convicted of physically or sexually abusing a minor. ECF No. 113 ¶ 22. He states that, upon further investigation, he learned that the DOC "did not restrict Ivy's visiting privileges based on a criminal charge or conviction" but rather based on the allegation of child abuse in Ivy's criminal complaint. *Id.* ¶ 24. Dobratz states that his conclusion that Ivy's visiting restrictions were reasonable and appropriate did not change after discovering his error. *Id.* ¶ 26.

***Ivy Files Suit***

Ivy originally filed this lawsuit on August 26, 2024, ECF No. 1, and he filed an amended complaint on June 11, 2025, ECF No. 67. Broadly speaking, Ivy challenges his NC Status, arguing that it prevents him from in-person contact visits and video calls with his minor daughter. *See id.* at 1. The R&R construed the amended complaint to raise the following claims:

(1) A Section 1983 claim against all Defendants for violating the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 143 at 14–15; *see* ECF No. 67 ¶¶ 47–48.

(2) A Section 1983 claim against all Defendants for violating Ivy's First Amendment right to freedom of association.[5] ECF No. 143 at 15; *see* ECF No. 67 ¶ 47.

---

[5] The precise theory of Ivy's First Amendment claim is not entirely clear. The amended complaint refers to the First Amendment right to access the courts, *see* ECF No. 67 ¶ 46, but Defendants' summary-judgment briefing interprets this claim as implicating the freedom of association, *see* ECF No. 110 at 16, a characterization that Ivy echoes in his opposition to Defendants' motion for summary judgment, *see* ECF No. 127 at 3. Ivy's claim comports most clearly with a freedom-of-association claim, so the Court will interpret it as such. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (explaining that a court should construe a pro se complaint "in a way that permits the layperson's claim to be considered within the proper legal framework").

(3) A Section 1983 claim against all Defendants for violating Ivy's substantive due process rights under the Fourteenth Amendment. ECF No. 143 at 15–23; *see* ECF No. 67 ¶¶ 43, 47.

(4) A Section 1983 claim against all Defendants for violating Ivy's procedural due process rights under the Fourteenth Amendment. ECF No. 143 at 23–29.[6]

(5) A Section 1983 conspiracy claim against Dobratz for conspiring with DOC personnel to deprive Ivy of his First and Fourteenth Amendment rights. ECF No. 143 at 30–31; *see* ECF No. 67 ¶ 46.

Ivy sues all Defendants in their individual and official capacities, and he seeks injunctive, declaratory, and monetary relief. ECF No. 67 at 1, 15–16.

Defendants moved for summary judgment on all claims, asserting qualified immunity, sovereign immunity, a statute-of-limitations defense, and merits arguments. ECF No. 109; *see* ECF No. 110. Ivy moved for partial summary judgment, seeking a determination of liability on his due process claims. ECF Nos. 118, 120.

The R&R concluded that all claims should be dismissed except for Ivy's Section 1983 claim alleging a violation of his First Amendment and Fourteenth Amendment substantive due process rights for the restriction on his ability to communicate with his minor daughter through video calls. *See generally* ECF No. 143. The R&R concluded, however, that this claim cannot proceed against Heald and that monetary damages are barred against Defendants by the doctrines of sovereign and qualified immunity. *Id.* at 31–36. The R&R also observed that injunctive and declaratory relief were

[6] The R&R concluded that Ivy's amended complaint does not allege a procedural due process violation, but the R&R nevertheless considered the merits of that claim because both Ivy and Defendants had briefed it. ECF No. 143 at 23–24.

theoretically available as remedies. *Id.* at 36–39. That said, the R&R noted that shortly before the parties filed their summary-judgment motions, Ivy was transferred from MCF-Stillwater to MCF-Rush City. *Id.* at 37. Because none of the currently named Defendants work at or have any authority over MCF-Rush City, the R&R concluded that injunctive and declaratory relief is unavailable as the amended complaint is currently pleaded. *Id.* Even so, the R&R offered Ivy the opportunity to file a second amended complaint related to his sole surviving claim that would name the appropriate officials at MCF-Rush City, thereby resurrecting his requests for injunctive and declaratory relief. *Id.* at 39.

Both Ivy and Defendants timely filed objections to the R&R. ECF No. 146, 150. In their objections, Defendants explain that as of March 31, 2026, DOC implemented a new framework of policies relating to inmates' visitation and contact privileges. ECF No. 147 ¶¶ 4–8. The changes in those policies came about not because of Ivy's lawsuit, but rather as part of a comprehensive overhaul of DOC policies that began in 2023. *Id.* ¶¶ 4, 13. After those policies went into effect, DOC began a "a comprehensive review of all incarcerated individuals at DOC facilities whose visiting privileges were restricted under the DOC's previous policies." *Id.* ¶ 8. On April 16, 2026, the DOC determined that Ivy "no longer meets the criteria for visiting restrictions under the DOC's new policies at this time." *Id.* ¶ 10. The DOC therefore removed Ivy's visitation restrictions, meaning he is now permitted to have in-person visits and video calls with his minor daughter. *Id.* Defendants explain that Ivy's visitation privileges could be restricted in the future for "visiting-related misconduct" or if the DOC learns of "new information about Ivy's past or current behavior that could indicate that Ivy presents a threat to visitors." *Id.* ¶ 11. Absent

future misconduct or new information, however, the DOC states that Ivy will retain visitation and video-call privileges. *Id.* Accordingly, Defendants assert that Ivy's request for declaratory and injunctive relief is moot. ECF No. 146 at 9–10.

## ANALYSIS

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl v. Gen. Am. Life Ins. Co.*, 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted). At this procedural juncture, the Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted) (internal quotation marks omitted). The Court must view the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This approach is only "slightly modified" when a court is presented with cross-motions for summary judgment. *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012). In such a case, the Court considers each party's motion in a light most favorable to the non-moving party. *Id.* Because Ivy is proceeding pro se, the Court is mindful to liberally construe his filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

### I. Requests for Injunctive and Declaratory Relief

Circumstances have changed since the R&R was issued. When issuing the R&R, Magistrate Judge Foster assumed, based on the record before her, that Ivy was still restricted from having in-person contact visits and video calls with his minor daughter. *See* ECF No. 143 at 39. As Defendants now explain, however, Ivy's visitation restrictions were

lifted on April 16, 2026.[7] ECF No. 147 ¶ 10. According to Defendants, that means that Ivy's requests for prospective relief are now moot. ECF No. 146 at 9–10. If that's true, and if the R&R's conclusion that monetary damages are unavailable is also true, then that means that Ivy is entitled to no effective remedy, and this case must be dismissed. It is therefore prudent for the Court to first consider whether Ivy is still entitled to the forms of relief he seeks: monetary, injunctive, and declaratory.

Start with Ivy's claims for injunctive and declaratory relief, which Defendants say are moot. "Article III restricts federal courts to the resolution of cases and controversies." *Davis v. FEC*, 554 U.S. 724, 732 (2008). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at 732–33 (citation omitted) (internal quotation marks omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted) (internal quotation marks omitted).

Ivy's request for injunctive relief is clearly moot: he wanted the restrictions on his visitation and video-call privileges to be lifted, ECF No. 67 at 15–16, and now those

---

[7] Ivy states that no one has notified him that his visitation restrictions have been lifted, although he does not dispute that they have indeed been lifted. ECF No. 151 at 3. The Court observes that Defendants learned of this change in circumstances more than two months before the R&R was issued. It would have been preferable for Defendants to have promptly informed Magistrate Judge Foster of that material development while the parties' motions were pending before her so that she could have issued an R&R based on an accurate record.

restrictions have been lifted, ECF No. 147 ¶ 10.[8] Accordingly, "changed circumstances already provide the requested relief and eliminate the need for court action." *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004). Ivy's request for declaratory relief is likewise moot, as there is no longer a "substantial controversy" between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (citation omitted) (emphasis omitted) (holding inmate's request for declaratory relief was moot when he was transferred from one prison to another and therefore was "no longer subject to the alleged unlawful policies or conduct" of the first prison).

Although Ivy does not invoke it, this sequence of events plainly implicates the voluntary-cessation doctrine. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case" unless the defendant shows that the allegedly unlawful conduct "could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 174, 189 (2000) (citation omitted). To show that a case is truly moot, "a defendant must prove no reasonable expectation remains that it will return to its old ways." *FBI v. Fikre*, 601 U.S. 234, 242 (2024) (citation omitted) (cleaned up). The defendant's burden is "slightly less onerous

---

8 Although this information was not before Magistrate Judge Foster when she issued the R&R, the Court may "receive further evidence" when reviewing an R&R. D. Minn. L.R. 72.2(b)(3). More importantly, because questions of mootness are matters of subject matter jurisdiction, *Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010), and because a federal court must independently assure itself of its subject matter jurisdiction at all stages of a case, *see Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987), the Court elects to consider this new evidence to ensure its own jurisdiction.

when it is the government that has voluntarily ceased the challenged conduct." *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021).

Defendants have met that burden here. They explain that Ivy no longer meets the criteria for visitation restrictions under DOC's new policies. ECF No. 147 ¶ 10. They concede that Ivy's visitation privileges could be restricted in the future for "visiting-related misconduct" or if the DOC learns of "new information about Ivy's past or current behavior that could indicate that Ivy presents a threat to visitors." *Id.* ¶ 11. Absent this new misconduct or information, however, Defendants state that Ivy will retain visitation and video-call privileges. *Id.*

The Eighth Circuit's decision in *Prowse* is instructive. In that case, a transgender inmate sued to receive hormone therapy while in prison. 984 F.3d at 701. While the inmate's lawsuit was pending, the prison approved her request for hormone therapy, began administering the therapy, and adhered to the position that the inmate would "continue to receive hormone therapy so long as her treating medical professionals determine that hormone therapy is clinically indicated or recommended." *Id.* at 702. The Eighth Circuit held that the inmate's request for injunctive relief was moot given that prison officials expressly agreed to continue providing the inmate with hormone therapy so long as it was medically advisable. *Id.* at 703. Here, like in *Prowse*, the prison has agreed to Ivy's requested relief, and will maintain that relief unless some future change in circumstances occurs. ECF No. 147 ¶¶ 10–11. And if Ivy is once again subjected to visitation restrictions, "it would be under a different set of facts than those giving rise to [his] original [complaint]." *Ballard v. Davis*, No. 25-cv-145 (LMP/SGE), 2025 WL 1742693, at *3

(D. Minn. June 24, 2025) (citation omitted). Under these circumstances, the unconstitutional conduct that Ivy presently challenges "could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189.

This conclusion is bolstered by Defendants' sworn statement that the lifting of Ivy's visitation and video-call restrictions was not motivated by Ivy's lawsuit but was part of a years-long effort to rewrite DOC's policies. ECF No. 147 ¶ 11. At its core, the voluntary-cessation doctrine "exists to prevent a defendant from engaging in 'strategies' whereby challenged conduct is suspended after being sued and then renewed after the defendant has won a dismissal." *Garcia v. Eischen*, No. 24-cv-4106 (KMM/SGE), 2025 WL 1476567, at *4 (D. Minn. May 22, 2025) (quoting *Fikre*, 601 U.S. at 241). The undisputed fact that changes in DOC's policies were contemplated before Ivy ever filed this lawsuit strongly suggests that Defendants are not trying to "lure the Court into an improper dismissal," only to immediately reimpose visitation restrictions on Ivy. *Id.*

In sum, considering Defendants' "less onerous" burden to prove that their allegedly unconstitutional conduct is not "reasonably . . . expected to recur," the Court concludes that Ivy's requests for injunctive and declaratory relief are now moot. *Prowse*, 984 F.3d at 703; *see Williams v. Ozmint*, 716 F.3d 801, 809–10 (4th Cir. 2013) (holding that inmate's request for injunction to restore visitation privileges was moot when those privileges were restored during the pendency of his lawsuit). The Court therefore sustains Defendants' objection seeking dismissal of Ivy's requests for injunctive and declaratory relief and declines to adopt the portion of the R&R permitting those requests for relief to proceed. All claims for injunctive and declaratory relief are dismissed.

## II. Requests for Monetary Damages

Ivy brings claims for monetary damages against Defendants in both their official and individual capacities. ECF No. 67 at 1, 16. None of those claims may proceed.

### a. Official-Capacity Claims

The R&R concluded that Ivy's claims for monetary damages against Defendants in their official capacities were barred by sovereign immunity. ECF No. 143 at 33–34. Ivy vaguely objects to that conclusion. ECF No. 150 at 12. The Eleventh Amendment bars private parties, such as Ivy, from suing a state in federal court. U.S. Const. amend. XI. Minnesota's sovereign immunity from damage awards extends to its officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). It is undisputed that all Defendants in this case are state officials, so Ivy's claims for damages against them in their official capacities are barred by sovereign immunity. *Id.*

There are two exceptions to sovereign immunity: (1) Congress "authorize[d] such a suit"; or (2) Minnesota "waive[d] its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Neither applies here. Ivy asserts only Section 1983 claims. ECF No. 67 ¶¶ 43, 46–48. But Congress has not abrogated Eleventh Amendment immunity for Section 1983 actions, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1988), and the State of Minnesota has not consented to be sued under Section 1983, *see Hussein v. Minnesota*, No. 19-cv-1913 (DSD/TNL), 2019 WL 5693733, at *2 (D. Minn. Nov. 4, 2019). Accordingly, over Ivy's objection, the Court adopts the R&R's conclusion that Ivy's claims for damages against Defendants in their official capacities are barred by sovereign immunity.

**b. Individual-Capacity Claims**

The R&R similarly concluded that monetary damages are unavailable against Defendants in their individual capacities, either because Ivy has failed to establish a constitutional violation or because qualified immunity bars an award of damages. ECF No. 143 at 14–21, 23–29, 34–36. The Court agrees that qualified immunity bars an award of damages for all of Ivy's claims against Defendants in their individual capacities.

"Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity analysis "requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Nord v. Walsh County*, 757 F.3d 734, 738 (8th Cir. 2014) (citation omitted) (internal quotation marks omitted). Unless both questions are answered affirmatively, qualified immunity applies. *Id.*

As for the second requirement, a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted) (internal quotation marks omitted). Courts do not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted). Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority," and although there

"need not be a prior case directly on point," existing precedent "must have placed the statutory or constitutional question beyond debate." *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (citation omitted). A court evaluates whether the right was clearly established at the time of the alleged constitutional violation. *See Estate of Nash v. Folson*, 92 F.4th 746, 759 (8th Cir. 2024).

**i. Eighth Amendment Claim**

Ivy contends that the restrictions on in-person visits and video calls with his minor daughter violated the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 143 at 14–15; *see* ECF No. 67 ¶¶ 47–48. Ivy cannot show that this right was clearly established at the time of the alleged constitutional violation. In 2003, the Supreme Court explained that the Eighth Amendment may be violated if "all visitation privileges" were permanently revoked or applied "in an arbitrary manner to a particular inmate." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003). Applying *Overton* in 2021, the Eighth Circuit explained that it was not clearly established that a blanket policy preventing all pretrial detainees from visiting with their minor children violated the Eighth Amendment. *See Manning v. Ryan*, 13 F.4th 705, 707–08 (8th Cir. 2021). Nonetheless, the Eighth Circuit repeated *Overton*'s holding that "prison officials who permanently or arbitrarily deny an inmate visits with family members" may violate the Eighth Amendment. *Id.* at 708.

Unlike *Manning*, this case does not involve a blanket prohibition on visitation with minor children: it is not genuinely disputed that Ivy's restrictions were imposed based on the allegation of child abuse contained in his criminal complaint. ECF No. 143 at 6, 9, 11; *see* ECF No. 114 ¶¶ 13–14. Nor does this case involve a permanent restriction on all

visitation privileges: Ivy could appeal his visitation restrictions annually, an option of which he occasionally took advantage. ECF No. 143 at 4, 8–9. And he had other outlets to communicate with his minor daughter, including phone calls, emails, and letters. ECF No. 114 ¶ 15.

Ivy instead suggests that this case involves an "arbitrary" denial of visitation privileges, which the Eighth Circuit recognized could qualify as an Eighth Amendment violation. ECF No. 150 at 2. But the clearly-established-law inquiry requires more precision, for Ivy must show that the constitutional question would have been "beyond debate" to Defendants. *Thurmond*, 972 F.3d at 1012; *see Malavé v. Weir*, No. 3:16-cv-00009 (JAM), 2018 WL 500644, at *5 (D. Conn. Jan. 22, 2018) (explaining that a holding that "arbitrary" visitation restrictions violate the Eighth Amendment "falls well short of declaring clearly established law"). So, the Court must ask whether it was "beyond debate" that imposing visitation restrictions on an inmate similarly situated to Ivy—that is, an inmate with a documented but unproven allegation of abuse—would be so arbitrary as to violate the Eighth Amendment. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (citation omitted) (holding that "clearly established law must be 'particularized' to the facts of the case"); *see also East v. Buckner*, No. 22-3310, 2024 WL 1154449, at *3 (8th Cir. Mar. 18, 2024) (considering whether inmate identified a favorable case involving a similarly situated inmate). *Manning* has nothing to say about this, and the available case law seems to cut against Ivy's position. *See, e.g.*, *Williams*, 716 F.3d at 804, 807 (finding no Eighth Amendment violation in imposing visitation restrictions based on prison officials' suspicion that inmate received contraband); *Steinbach v. Branson*,

No. 1:05-cv-101, 2007 WL 2985571, at *2–4, 15 (D.N.D. Oct. 9, 2007) (same); *Malavé*, 2018 WL 500644, at *1–2, 5 (same).

Ivy also advances that his period of visitation restrictions—10 years[9]—is a "long period of time." ECF No. 150 at 2. *Overton* suggested that a visitation restriction that is imposed for a "much longer period" could violate the Eighth Amendment. 539 U.S. at 137. But there is far more beneath the surface of those 10 years than Ivy suggests, so far more factual particularity is required to survive qualified immunity. Although Ivy was classified as NC Status for 10 years, he did not appeal his NC Status for at least six of those years—from 2016 to 2020 and from 2022 to 2024—even though he had the option to appeal annually. ECF No. 143 at 6–12. And Ivy does not meaningfully dispute that from 2024 onward, the DOC justified Ivy's NC Status on his prison disciplinary history. *Id.* at 9–12. Ivy cites no cases holding that a 10-year visitation restriction violates the Eighth Amendment when a prisoner does not challenge the restriction for more than half that time and accrues intervening prison disciplinary action.

Because Ivy fails to show that Defendants violated any right clearly established under the Eighth Amendment, he is not entitled to damages on this claim.

---

[9] Ivy suggests that his visitation restrictions have lasted for 11 years. ECF No. 150 at 2. Ten years is a more accurate calculation: Ivy was first classified as NC Status in 2016, ECF No. 143 at 5–6, and those restrictions were lifted in 2026, ECF No. 147 ¶ 10.

**ii. Substantive Due Process/First Amendment Claims[10]**

The R&R concluded that Ivy failed to demonstrate a genuine factual dispute as to whether the restriction on in-person contact with his minor daughter violated his substantive due process rights. ECF No. 143 at 15–20. The R&R also concluded that it was not clearly established that the prohibition on video calls with Ivy's daughter violated his substantive due process rights. *Id.* at 34–36. The Court agrees that Ivy fails to show a violation of clearly established substantive due process rights.

As a general matter, parents have a due process right to the care, custody, and management of their children. *See Swipies v. Kofka*, 348 F.3d 701, 703 (8th Cir. 2003). Family members also possess a right, arguably rooted in the First Amendment, "to maintain certain familial relationships, including association among members of an immediate family." *Overton*, 539 U.S. at 131; *see Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998), *rev'd on other grounds*, 155 F.3d 983 (8th Cir. 1998), *aff'd en banc*, 176 F.3d 419 (8th Cir. 1999). But although "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley*, 482 U.S. 78, 84 (1987), an inmate

---

10 The R&R considered the substantive due process and First Amendment claims together. That approach comports with how the Supreme Court and the Eighth Circuit have considered parallel substantive due process and First Amendment claims in factually analogous cases. *See Overton*, 539 U.S. at 131–36; *Manning*, 13 F.4th at 708. That approach also makes conceptual sense because the First Amendment and substantive due process claims effectively both invoke an associational right. *Cf. Muir v. Decatur County*, 917 F.3d 1050, 1053–54 (8th Cir. 2019) (citation modified) (explaining that although the right to marriage has been framed as a substantive due process right and a First Amendment associational right, the "nominal source of the right" does not alter the Court's analysis). Because no party objects to evaluating the substantive due process and First Amendment claims together, this Court, like the R&R, does so.

"does not retain rights inconsistent with proper incarceration," *Overton*, 539 U.S. at 131. That is particularly true of associational rights, which are "among the rights least compatible with incarceration." *Id.* So, to determine whether the restrictions on Ivy's in-person visits and video calls with his minor daughter comport with his First Amendment and substantive due process rights, the Court must ask whether the restriction "bear[s] a rational relation to legitimate penological interests." *Id.* at 132 (citing *Turner*, 482 U.S. at 89); *see Manning*, 13 F.4th at 708.

No one disputes that protecting minors from verbal, physical, and sexual abuse during in-person or virtual visits with inmates is a legitimate penological interest. *See Overton*, 539 U.S. at 133 (holding that "protecting child visitors from exposure to sexual or other misconduct" and "[p]rotecting children from harm" are legitimate penological goals). Ivy, however, submits two reasons why there is no rational relationship between those admittedly legitimate goals and his visitation restrictions. First, Ivy claims that his visitation restrictions were imposed because of the incorrect statement in his warrant of commitment that he was convicted of sex trafficking a minor. ECF No. 150 at 3–4. The record does not support that assertion; instead, officials at the various prisons at which Ivy has been incarcerated have consistently cited the criminal complaint, not the warrant of commitment, as justifying the visitation restrictions. Heald, the intake caseworker who originally designated Ivy NC Status, states that she relied on the criminal complaint's allegation that Ivy had repeatedly whipped K.M., a three-year-old child, with a belt, a statement that is confirmed by Heald's contemporaneous case notes. ECF No. 114 ¶¶ 13–14; *see* ECF No. 112-3. And although the explanations that prison officials provided to Ivy

in response to his kites and ARC appeals are far from models of clarity, none of them cite the warrant of commitment as the basis for Ivy's visitation restrictions. ECF No. 143 at 8–11. In fact, at least one cites the allegation in the criminal complaint—not the warrant of commitment—in explaining the basis for the restrictions. *Id.* at 9 (correctional officer at MCF-Stillwater explaining that "[d]ue to [Ivy's] assault of a 3 year old, [Ivy has] a "Non-Contact" with minors restriction").

The first time that the warrant of commitment was mentioned by one of the Defendants was in Dobratz's first letter to Ivy, which stated that his visitation restrictions were imposed because his "criminal convictions involve the sexual-physical abuse of minors." *Id.* at 11–12. This was a sloppy error on Dobratz's part, but it does not create a genuine factual dispute as to whether the erroneous warrant of commitment was the basis for Ivy's visitation restrictions. After Ivy responded to Dobratz that he was never convicted of a crime involving the sexual or physical abuse of children, Dobratz immediately acknowledged that he "misspoke" in his previous letter and that Ivy had not been convicted of a crime involving abuse of a minor, but that the criminal complaint in his case revealed an "incident of abuse" involving a minor (that is, K.M.). ECF No. 113-5. Dobratz also offers a declaration confirming that the "DOC did not restrict Ivy's visiting privileges based on a criminal charge or conviction," that his statement that Ivy had been convicted of abusing a minor was a "mistake," and that "the DOC restricted Ivy's visiting with minors based on information in the criminal complaint that Ivy struck a minor child with a belt." ECF No. 113 ¶¶ 22, 24. Ivy offers no evidence suggesting that Dobratz's statement in the first letter was anything other than a careless mistake. Under those circumstances, the

Court agrees with the R&R that there is no genuine factual dispute as to whether Ivy's visitation restrictions were premised on his erroneous warrant of commitment—they were not. ECF No. 143 at 18–19; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (explaining that the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to avoid summary judgment).

That leaves Ivy's second argument: that the allegation in the criminal complaint that he abused K.M. is unproven. ECF No. 150 at 3–4. To avoid qualified immunity on this claim, however, Ivy would need to show that it was clearly established that relying on an unproven allegation of abuse to impose restrictions on visitation with his minor daughter violated his substantive due process rights. *See White*, 580 U.S. at 79 (citation omitted) (explaining that "clearly established law must be 'particularized' to the facts of the case). Ivy's cited cases are factually far afield of this case. *Jones v. Wilhelm* involved a Fourth Amendment violation resulting from the search of a person's apartment. 425 F.3d 455, 457 (7th Cir. 2005). *Vitek v. Jones* considered a substantive due process challenge to involuntarily transferring prisoners to mental health institutions. 445 U.S. 480, 487–91 (1980). *Stanley v. Illinois* held that unwed fathers have a constitutional right to due process before losing legal custody of their children. 405 U.S. 645, 650, 657–58 (1972). *Wolff v. McDonnell* and *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill* discussed the constitutional requirements to revoke an inmate's good time credits. *See* 472 U.S. 445, 454–56 (1985). And *Sandin v. Conner* evaluated the constitutionality of placing inmates in solitary confinement. 515 U.S. 472, 485–87. None of these cases have anything to do with an inmate's visitation privileges, let alone discuss those privileges at

the level of factual particularity that the qualified-immunity analysis demands. *See White*, 580 U.S. at 79.

Based on an independent review of the case law, the Court cannot hold that it was "clearly established" that depriving Ivy of in-person contact visits and video calls with his minor daughter based on an unproven allegation of child abuse violates his substantive due process rights or First Amendment associational rights. *Overton* itself cannot serve as clearly established law, since the Supreme Court expressly declined to "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." 539 U.S. at 131–32. A district court surveying the post-*Overton* case law in 2016 observed that little clarity had been achieved in the contours of that right since *Overton*, explaining that the case law "suggests that prisoners may enjoy some right to visitations from their children, and that a complete ban on visitations by minors may violate that right, but the question remains unsettled." *White v. Pazin*, No. 1:12-cv-00917-BAM (PC), 2016 WL 6124234, at *10 (E.D. Cal. Oct. 19, 2016), *report and recommendation adopted*, 2017 WL 661928 (E.D. Cal. Feb. 16, 2017). That lack of clarity persists in the Eighth Circuit: the most recent relevant case, *Manning*, largely restated *Overton*'s general holding. *See* 13 F.4th at 707–08. And the case law addressing factually analogous claims to Ivy's seems to undermine his position. *See, e.g.*, *Williams*, 716 F.3d at 804, 807 (4th Cir. 2013) (finding no violation of associational rights in imposing visitation restrictions based on prison officials' suspicion that inmate received contraband); *Flynn v. Burns*, 289 F. Supp. 3d 948, 953, 967 (E.D. Wis. 2018) (granting qualified immunity to prison officials on substantive due process and First Amendment claim based

on visitation restrictions with inmate's child requested by the child's mother, even though prison officials "did not conduct any type of investigation" into the mother's request before imposing the restrictions); *King v. Caruso*, 542 F. Supp. 2d 703, 714–15 (E.D. Mich. 2008) (finding no violation of associational rights when inmate was prohibited from visits with his wife based on allegation that the inmate and his wife were smuggling contraband into the prison). Given the unclear state of the law at both the district and appellate court levels, Ivy fails to demonstrate a violation of any clearly established substantive due process or First Amendment associational rights. Defendants are therefore entitled to qualified immunity on those claims, and the Court will adopt the R&R insofar as it reaches this conclusion.[11]

**iii. Procedural Due Process Claim**

Last is Ivy's procedural due process claim. Although the Court agrees with the R&R that Ivy did not properly raise a procedural due process claim in his amended complaint, the Court will address the merits of that claim for the reasons discussed by the R&R. ECF No. 143 at 23–24.

A procedural due process claim is reviewed in two steps. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). The first question is whether the plaintiff "has been deprived of a protected liberty or property interest." *Id.* If so, the second question

---

[11] The R&R concluded that Ivy failed to demonstrate a genuine factual dispute as to whether the restriction on in-person contact with his minor daughter violated his substantive due process rights. ECF No. 143 at 15–20. The Court need not decide whether the record establishes a constitutional violation because any violation did not infringe on Ivy's clearly established rights.

considers "what process is due." *Id.* The R&R concluded that Ivy established a protected liberty interest but failed to show that the process he received was constitutionally deficient. ECF No. 143 at 23–29. The Court need not answer what process was due because Ivy does not demonstrate the deprivation of a clearly established liberty interest.

The purported liberty interest asserted by Ivy is the right to have in-person contact visits and video calls with his minor daughter while incarcerated. ECF No. 150 at 5. In the Eighth Circuit, however, an inmate does not have a constitutionally protected liberty interest in "contact visitation." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). That is true even when an inmate is deprived of contact visitation with his children. *See Scheetz v. Kaemingk*, No. Civ. 13-4144-KES, 2014 WL 841729, at *2 (D.S.D. Mar. 4, 2014) (citation omitted) (explaining in the context of a procedural due process challenge that "in the Eighth Circuit, it appears that prison officials are free to arbitrarily deny visitation, even indefinitely, with a prisoner's mother, wife, child, or close friend without being subject to federal court scrutiny"). Ivy's procedural due process challenge to the restriction on in-person visits with his minor daughter therefore fails as a matter of law.

As for Ivy's procedural due process challenge to the restriction on video calls with his minor daughter, the law is murky, which entitles Defendants to qualified immunity. In *Phillips*, the Eighth Circuit suggested, without elaboration, that the liberty-interest analysis for denying contact visits may differ from that for denying non-contact visits. *See Phillips*, 320 F.3d at 847 ("There is no indication that Phillips was denied non-contact visitation . . . ."). However, the parties do not identify, and the Court has not found, an Eighth Circuit case establishing that the deprivation of non-contact visits implicates a

liberty interest under the Due Process Clause. If anything, case law in the Eighth Circuit suggests the opposite. *See Brown v. Alexander*, No. 08-cv-4936 (DWF/JJG), 2009 WL 315609, at *4 (D. Minn. Feb. 9, 2009) (finding no liberty interest implicated in restriction on inmate's telephone access); *Swift v. Doe*, No. 3:23-CV-00253-DPM-BBM, 2024 WL 4229504, at *3–4 (E.D. Ark. May 6, 2024) (same).[12] Suffice to say, Ivy's restriction on video calls with his minor daughter does not deprive him of a *clearly established* liberty interest.

Given the above case law, the Court cannot conclude that "every reasonable official would have understood" that depriving Ivy of in-person visits and video calls infringed on a constitutionally protected liberty interest. *Mullenix*, 577 U.S. at 11. Defendants are therefore entitled to qualified immunity on Ivy's procedural due process claim.[13]

* * *

In summary, Ivy's requests for prospective injunctive and declaratory relief are moot, and his request for monetary damages is barred by sovereign and qualified immunity.

---

[12] The R&R held that Ivy had a liberty interest in "maintain[ing] a parental relationship with his minor daughter." ECF No. 143 at 25. The Court is not so sure. Outside of the prison context, that is assuredly true. *See Swipies*, 348 F.3d at 703; *Singleton*, 133 F.3d at 635. But in *Overton*, the Supreme Court suggested that any right to familial association may be curtailed by the nature of incarceration itself. 539 U.S. at 131–32 ("We need not attempt to explore or define the asserted right of association at any length or *determine the extent to which it survives incarceration*." (emphasis added)). In any event, the Eighth Circuit case law cited above creates enough doubt about the contours of that liberty interest in the prison visitation context to warrant the application of qualified immunity.

[13] Because the Court concludes that Defendants are entitled to qualified immunity on Ivy's claims for monetary damages, the Court need not address any statute-of-limitations challenges.

That conclusion ends this case. Accordingly, the Court grants Defendants' motion for summary judgment and denies Ivy's motion for partial summary judgment. The Court adopts the R&R to the extent it is consistent with this Order.[14]

**CONCLUSION**

For these reasons, and based on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED THAT**:

1. Defendants' Objection to the Report and Recommendation (R&R) (ECF No. 146) is **SUSTAINED IN PART**;

2. Rashad Ramon Ivy's Objection to the R&R (ECF No. 150) is **OVERRULED**;

3. The R&R (ECF No. 143) is **ADOPTED IN PART**;

4. Ivy's Motion for Partial Summary Judgment (ECF No. 118) is **DENIED**;

5. Defendants' Motion for Summary Judgment (ECF No. 109) is **GRANTED**; and

6. The amended complaint (ECF No. 67) is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 1, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

---

[14] The R&R previously granted Ivy leave to file a second amended complaint. ECF No. 143 at 39. Because the Court dismisses this case, any amendment is moot, so Ivy is not entitled to file a second amended complaint.